IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
WESTERN DIVISION

PRIMEBANK, an Iowa Banking )
Association, for Itself and )  NO. 1:06-cv-00040-CRW-RAW
as Trustee Under a Trust )
Fund Agreement In Lieu Of )
Bond Dated October 26, 2004 )
and Designated as )
TFA NO. IA-2088, )
)
      Plaintiff, )  REPORT AND RECOMMENDATION
)  ON DEFENDANT ROGER COON'S
  vs. )  MOTION TO DISMISS AND
)  ORDER DISMISSING COUNT X
MAJESTIC FOOD GROUP, )  OF THE AMENDED COMPLAINT
LLC, et al., )
)
      Defendants. )

     This case involves the collapse of Majestic Food Group,

LLC ("Majestic"), a packer with a hog processing facility in Le

Mars, Iowa. Majestic was not long-lived. It opened the Le Mars

facility in November 2004. It ceased operating on March 17, 2005.

Plaintiff Primebank ("the bank") lent money to Majestic on a

revolving line of credit. When Majestic failed it left numerous

unpaid creditors, including the bank and many hog suppliers who now

have made claims under the Packers and Stockyards Act (the "PSA").

7 U.S.C. § 181 *et seq*. The bank held certain trust, receivership

and other funds subject to competing creditor claims. The bank

commenced the present interpleader action in this Court in which it

also sought declaratory relief, primarily to establish the priority

of claims, and damages. The damages claims are against Roger Coon,

alleged variously to have been Majestic's President or President of

its Board of Directors[1] (Amended Complaint ¶¶ 5, 379) during its decline, as well as Majestic's former CEO, Marston McGwin. The bank sues Coon and McGwin for breach of fiduciary duty (Count VII), fraud and fraudulent misrepresentation (Counts VIII and IX), and nondisclosure/fraudulent concealment (Counts XI and XII).[2] Coon moves to dismiss these counts against him for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). He contends he did not owe a fiduciary duty to the bank, the allegations of fraud are insufficient to meet the requirements of Fed. R. Civ. P. 9(b), and in the absence of a relationship of trust and confidence with the bank there can be no actionable nondisclosure or concealment under Iowa law. The bank resists.

Judge Wolle referred Coon's motion to dismiss to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Hearing was held on April 5, 2007. The motion is fully submitted.

## I. FACTUAL ALLEGATIONS

For the purposes of the present motion the Court takes the allegations of fact pleaded in the Amended Complaint as true. The bank was Majestic's "inventory financier." (Amended Complaint ¶ 356). On October 26, 2004, Majestic entered into a "Trust Fund

---

[1] At hearing counsel for the bank and Coon appeared to agree that Coon was President of Majestic's Board of Directors.

[2] The Amended Complaint entitles each claim as a "Claim for Relief." The Court has assigned the claims count numbers for ease of reference.

Agreement in Lieu of Bond" (the "TFA") with the bank in the amount of $250,000, which served to insure Majestic's payment obligations under the PSA. (Amended Complaint, Ex. 1). On November 10, 2004 Majestic entered into a Business Loan Agreement with the bank for a line of credit (Amended Complaint, Ex. 10) and executed two promissory notes (Amended Complaint, Ex. 8 at 1-2). The notes were further secured by a Commercial Security Agreement. (Amended Complaint Ex. 4). Defendant McGwin executed the debt instruments (Exs. 4, 8 and 10) on behalf of Majestic.

The bank alleges that Majestic, through its officers, directed the corporation not to comply with the prompt payment requirements of the PSA while representing to the bank that it would comply with all aspects of the statute. (Amended Complaint ¶¶ 356, 357, 358). It is further alleged that beginning in January 2005 and continuing to the time the facility was closed in March 2005, McGwin and Coon "knowingly concealed working capital shortages and caused Majestic to fail to timely pay the TFA Claimants and the Trust Claimants for livestock purchases." (Id. ¶ 359). Specifically, the bank alleges that on January 28, 2005 McGwin represented that "Majestic had turned the corner" on its ability to produce hog products and it should be profitable that week. (Id. ¶ 366(A)).

The bank further alleges that from approximately February 2005 McGwin and Coon began to notify groups of the interpled

claimants that Majestic would pay only 33% of the amount owed for livestock purchases. (Amended Complaint ¶ 360). At the same time McGwin and Coon are alleged to have falsely represented to the bank that Majestic was current on all its payables, continued to operate, purchase hogs, and accept deliveries, even though it was insolvent. (Id. ¶ 363). Specifically, McGwin is alleged to have represented to the bank that the company's cash flow, deposits and sales had been good. (Id. ¶ 366(B)). The bank alleges that on February 8, 2005 McGwin represented inventory sales would exceed $450,000 by the end of the month, enabling Majestic to reduce its line of credit with the bank and possibly even repay it in full. (Id. ¶ 366(D)).

The bank alleges that on March 8, 2005 Coon admitted to the bank McGwin had not given good information to the bank, had withheld important information, Majestic's board would terminate McGwin and Chet Coolbaugh would be Majestic's new president. (Amended Complaint ¶ 366(E)). Coon is also alleged on the same date to have represented to the bank that Majestic's accounts payable situation was okay and would be caught up in a few weeks. (Id.) On March 11, 2005 Chet Coolbaugh and Rodney Dykstra (another named defendant) are alleged to have represented to the bank that Majestic would have no problems continuing to harvest hogs and making money and that the plant was operating very well. (Id. ¶ 366(F)). They purportedly also represented their understanding that

4

the sale of inventory must be used to pay down the unpaid balances due the bank. (<u>Id.</u>)

On March 15, 2005 Coon is alleged to have made representations to the bank that Majestic would harvest 680 hogs that date, another 700 hogs the next Tuesday, 300 hogs on Wednesday and 560 hogs on Thursday. (Amended Complaint ¶ 366(G)). In fact, no hogs were harvested as represented. (<u>Id.</u> ¶ 372). On March 16, 2005 the bank unsuccessfully attempted to call Coon and Coolbaugh. (<u>Id.</u> ¶ 367). On March 17, 2005 Majestic's operations were shut down without any notice to the bank. (<u>Id.</u> ¶ 373).

All of the conduct before the plant shut down is alleged to have been undertaken to induce the bank to continue to make advances under the debt instruments and to forebear from collecting on the instruments.(Amended Complaint ¶ 366). Primebank alleges it was unaware hog suppliers had been told they would only receive partial payment and continued to advance more than $500,000 under the debt instruments in March 2005. (<u>Id.</u> ¶ 364).

The bank filed a state court receivership action in the Iowa District Court for Plymouth County, on March 30, 2005. With the consent of Majestic, a receiver was appointed to administer specific "Collateral and Bank Owned Receivables." (Amended Complaint, Ex. 2 at 1). The Court has accepted the interpled funds and they are held in three separate non-interest bearing accounts at the bank. (Order 2/9/2007).

## II. DISCUSSION

As noted, defendant Coon's motion challenges Counts VII (breach of fiduciary duty), VIII (fraud), IX (fraudulent misrepresentation), XI (nondisclosure), and XII (fraudulent concealment) as failing to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3]

A.   Rule 12(b)(6) Standards

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, the facts alleged in the complaint are taken as true and every reasonable inference is drawn in favor of the nonmovant. Koehler v. Brody, 483 F.3d 590, 596 (8th Cir. 2007); Brown v. Simmons, 478 F.3d 922, 923 (8th Cir. 2007). Dismissal "should be granted if 'it appears beyond doubt that the plaintiff can prove no set of facts which would entitle [it] to relief.'" Koehler, 483 F.3d at 596 (quoting Knapp v. Hanson, 183 F.3d 786, 788 (8th Cir. 1999)). "The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grds. by Davis v. Scherer, 468 U.S. 183, 192 (1984). To avoid dismissal "[t]he complaint must contain

---

[3] In conjunction with its response to the motion, plaintiff filed a Consented to Motion to Dismiss the Tenth Claim (Count X) with Prejudice [214]. Count X pleaded negligent misrepresentation. The motion to dismiss Count X will be granted.

sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim. . . ." <u>Levy v. Ohl</u>, 477 F.3d 988, 991 (8th Cir. 2007)(quoting <u>DuBois v. Ford Motor Credit Co.</u>, 276 F.3d 1019, 1022 (8th Cir. 2002)); <u>accord</u> <u>Brown</u>, 478 F.3d at 923 ("each element of the claim must be pled in the complaint"). "Written instruments attached to the complaint become part of it for all purposes." <u>Quinn v. Ocwen Federal Bank FSB</u>, 470 F.3d 1240, 1244 (8th Cir. 2006)(citing Fed. R. Civ. P. 10(c)).

        With these standards in mind, the Court turns to the merits of defendant's motion.

B.    <u>Breach of Fiduciary Duty</u>

        Under Iowa law, the existence of a fiduciary relationship is a legal issue determined on a case-by-case basis. <u>Weltzin v. Cobank, ACB</u>, 633 N.W.2d 290, 292, 293 (Iowa 2001). The Iowa courts have relied on the Restatement (Second) of Torts in holding that "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." <u>Kurth v. Van Horn</u>, 380 N.W.2d 693, 695 (citing Restatement (Second) of Torts § 874 cmt. a at 300 (1979)).

                Factors indicating that a fiduciary
                relationship may exist "include the acting of
                one person for another; the having and the
                exercising of influence over one person by
                another; the reposing of confidence by one
                person in another; the dominance of one person
                by another; the inequality of the parties; and
                the dependence of one person upon another."

<u>Weltzin</u>, 633 N.W.2d at 294 (quoting <u>Kurth</u>, 380 N.W.2d  at 695).

A fiduciary relationship may exist between banks and borrowers, however "fiduciary duties are not automatically implicated" in such a relationship, Weltzin, 633 N.W.2d at 293-94; Engstrand v. West Des Moines State Bank, 516 N.W.2d 797, 799 (Iowa 1994), in fact they usually do not arise absent one party acting as an advisor for, or exercising influence over, the other. Normally, dealings between a bank and its customer in connection with a loan transaction are considered to be arms-length. Sturm v. Peoples Trust & Sav. Bank, 713 N.W.2d 1, 5 (Iowa 2006); Weltzin, 633 N.W.2d at 292.

In Count VII of the Amended Complaint the bank alleges Coon (with McGwin) caused Majestic to fail to comply with the PSA's prompt payment requirements contrary to the representations in Majestic's loan disclosure statement, concealed that fact as well as Majestic's working capital shortages, and falsely represented to the bank that Majestic was current on all payables and its business outlook was good in reliance on all of which the bank continued to loan money to its ultimate detriment. It seeks a judgment against Coon and McGwin "for all of the Bank's losses and damages" incurred as a result of its dealings with Majestic. The legal basis for the bank's fiduciary duty claim is set out in ¶ 378 of the Amended Complaint: "Creditors of an insolvent corporation or corporation on the verge of insolvency enjoy a cause of action against the officers and directors of the corporation for mismanagement or

waste of assets triggered by fiduciary duties owed to creditors under the circumstances," citing <u>Webster Industries, Inc. v. Northwood Doors, Inc.</u>, 234 F. Supp. 2d 981, 997-98 (N.D. Iowa 2002).

Coon contends Count VII does not plead facts showing that he owed a fiduciary duty to the bank and that the duty of officers and directors of an insolvent corporation to the corporation's creditors on which it relies does not permit the damages relief sought. In response the bank concedes the general principle under Iowa law that the officers and directors of a corporate borrower do not owe a fiduciary duty to a lender. It appears to acknowledge the only fiduciary duty to Majestic's creditors Coon might have had arises under the "insolvency exception" to the general principle and argues Coon "may have received preferential payments" through Rolin Ranch, Inc., a hog supplier to Majestic in which Coon may have an interest. (Pl. Resist. at 9).

The "insolvency exception" is derived from the fiduciary duty of the officers and directors of an insolvent corporation "to wind up the affairs of [the] corporation and to pay the debts incurred." <u>Boyd v. Boyd & Boyd, Inc.</u>, 386 N.W.2d 540, 542 (Iowa App. 1986)(citing 15A W. Fletcher, <u>Cyclopedia of the Law of Private Corporations</u> § 7469 (Rev. Perm. Ed. 1981)("Fletcher")). In this context the officers and directors may not obtain a preference for themselves in the payment of corporate debts on "the theory that it

is inequitable that a director, whose position as to the knowledge of conditions and power to act for the corporation gives him an advantage, should be permitted to protect his own claim to the detriment of others at a time when it is apparent that all the unsecured debts of the corporation are equally in peril, and that all of them cannot be paid." Id. (quoting Fletcher). In Webster Industries, the authority on which the bank predicates its fiduciary duty claim, the court described the insolvency exception in practical terms:

> . . . [U]nder Iowa law, a creditor may pursue an action against an officer or director of an insolvent corporation to recover from the officer or director payments from the insolvent corporation to the officer or director for "antecedent debts," but not for payments to the officer or director for "contemporaneous debts" -- that is, debts incurred by the corporation to the officer or director at the time of the insolvency -- assuming that the officer or director receiving the payments acted with the utmost good faith and fairness.

Webster Industries, 234 F. Supp. 2d at 997(citing Boyd, supra, and State v. Simmer Oil Corp., 231 Iowa 1041, 2 N.W.2d 760, 762 (Iowa 1942)). The fiduciary duty resulting from the insolvency exception is thus both narrow and limited in the relief afforded -- the recovery of preferential antecedent debt payments, or other debt payments unfair under the circumstances, to the officer/director made during insolvency.

Count VI of the Amended Complaint captioned "Declaratory Judgment for Set-off, Recoupment, Subordination, and Disallowance" in substance seeks a declaratory judgment that the claims of certain categories of defendants, presumably including Coon and McGwin, be subordinated to those of the bank and other legitimate claimants and subject to set-off or recoupment. The averments in Count VI are incorporated by reference in Count VII. The bank argues the material allegations in Count VI when read together with those in Count VII are sufficient to plead an insolvency exception fiduciary duty claim against Coon.

Without naming any specific defendant (other than the Iowa Premium Pork Company) Count VI alleges "[s]ome or all of the defendants . . . may be insiders of Majestic . . . (the 'Insider Defendants') . . ., may be fiduciaries of Majestic and Majestic's creditors (the 'Fiduciary Defendants'), . . . may have breached the terms of their marketing . . . or other agreements . . . and may have been overpaid or prepaid for livestock . . . (the 'Breaching Defendants'). . . [or] may have" provided the bank with materially false information or concealed material information from it which they had a duty to disclose, "(the 'Wrongdoing Defendants')." (Amended Complaint ¶¶ 346-49). The bank also says it has recently uncovered evidence that a Majestic hog supplier, Rolin Ranch, received payment for hogs during Majestic's period of insolvency. Coon's wife, Linda, is a registered agent for Rolin Ranch and Roger

Coon is listed as the contact person for the ranch on a Majestic accounts payable schedule. The bank attaches documentation to support these facts to its resistance. From this the bank suggests Coon may have had a financial interest in Rolin Ranch giving rise to a possible claim for preferential payments. At hearing the bank's counsel indicated the bank also has reason to believe Majestic insiders who were supplying hogs paid themselves fully while shorting other hog suppliers, raising a question about the good faith and fairness of contemporaneous debt payments.

An action to recover a preferential payment under the "insolvency exception" is equitable in nature, similar to an action to set aside a fraudulent conveyance. See Graham v. Henry, 456 N.W.2d 364, 366 (Iowa 1990). However, the allegations put forward to support the equitable relief sought in Count VI cannot serve as a bootstrap to convert the breach of fiduciary duty damages claim in Count VII into something that it is not. By its terms, Count VII pleads the insolvency exception as the basis for a general duty of care and loyalty to the bank and other creditors under which Coon as an officer and/or director is liable to Majestic's creditors for mismanagement and waste of Majestic's assets. (Amended Complaint ¶¶ 378-80). The bank does not seek the recovery of preferential payments in Count VII, it claims entitlement to a judgment for all of its losses and damages resulting from its dealings with Majestic. The insolvency exception does not give rise to the broad

fiduciary duty on which Count VII is based or permit the damages relief sought.

There are two additional problems with the bank's argument on the fiduciary duty claim. First, the allegations in Count VI relied on to support those allegations in Count VII are conclusory and indefinite. Count VI alleges only that "some or all" of the defendants might be fiduciaries, insiders, contract breachers or wrongdoers whose own claims should be discounted. See Quinn v. Ocwen Federal Bank FSB, 470 F.3d 1240, 1244 (8th Cir. 2006)("'complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim,'" quoting DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002)). Second, on a Rule 12(b)(6) motion the Court cannot consider the extra-pleading evidence tendered by the bank of the payments to Rolin Ranch and Coon's involvement in that corporation. See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)(on a Rule 12(b)(6) motion "the court generally must ignore materials outside the pleadings").[4]

In sum, under no set of facts would the insolvency exception on which the bank relies support a finding of a fiduciary duty by Coon to the bank the breach of which would entitle the bank to the relief requested in Count VII. It is not possible to contort

---

[4] The Court declines to treat the present motion as a motion for summary judgment under Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(b).

Count VII as pleaded into a narrow insolvency exception claim against Coon to recover a preferential or unfair payment for an antecedent debt. Accordingly, the motion to dismiss with respect to Count VII should be granted, without prejudice, however, to subsequent amendment to plead a claim against Coon for the recovery of a preferential or unfair payment under the insolvency exception should facts emerge which would support such a claim. Consequently, the dismissal should be understood as with prejudice only to a breach of fiduciary duty claim for monetary relief beyond the recovery of preferential or unfair payments under the insolvency exception.

C.    Fraud/Fraudulent Misrepresentation

The normal deferential standard of review of a Rule 12(b)(6) motion is "modified by the heightened pleading requirement of Fed. R. Civ. P. 9(b) that fraud be pleaded with particularity." Cagin v. McFarland Clinic, P.C., 317 F. Supp.2d 964, 968 (S.D. Iowa 2004). Rule 9(b) specifies that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "The particularity requirement . . . requires a party alleging a fraud claim to plead 'the who, what, when, where and how: the first paragraph of any newspaper story.'" Id. at 970 (quoting Parnes v. Gateway 2000, Inc., 122 F.3d 539, 545-46 (8th Cir. 1997)).

> This requirement is designed to enable defendants to respond "specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." Abels [v. Farmers Commodity Corp., 259 F.3d 910,] at 920 [(8th Cir. 2001)]. The level of particularity required depends on, *inter alia,* the nature of the case and the relationship between the parties. Payne v. U.S., 247 F.2d 481, 486 (8th Cir. 1957). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Property Investments Inc. v. Quality Inns Int'l Inc., 61 F.3d 639, 644 (1995)[sic]. Rule 9(b) should be read "in harmony with the principles of notice pleading." Schaller Telephone Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002). . . .

BJC Health System v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007); see, e.g., U.S. *ex rel* Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556, 557 (8th Cir.), cert. denied, 127 S. Ct. 189 (2006). While the circumstances of the alleged fraud must be pleaded with particularity, elements going to the intent, knowledge, "and other condition of the mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

Count VIII alleges fraud on the part of McGwin and Coon in their capacity as officers and/or directors of Majestic and Count IX alleges fraudulent misrepresentation. These are effectively the same cause of action and require proof by clear, satisfactory, and convincing evidence of all of the following elements:

(1) [D]efendant made a representation to the
plaintiff, (2) the representation was false,
(3) the representation was material, (4) the
defendant knew the representation was false,[5]
(5) the defendant intended to deceive the
plaintiff, (6) the plaintiff acted in reliance
on the truth of the representation and was
justified in relying on the representation,
(7) the representation was a proximate cause
of plaintiff's damages, and (8) the amount of
damages.

Holliday v. Rain and Hail, L.L.C., 690 N.W.2d 59, 64 (Iowa

2004)(quoting Gibson v. ITT Hartford Ins. Co., 621 N.W.2d 388, 400

(Iowa 2001)); see Smidt v. Porter, 695 N.W.2d 9, 22 (Iowa 2005).[6]

Coon argues the representations the bank alleges Coon

made are insufficiently particular under Rule 9(b); they occurred

after the bank extended credit to Majestic, therefore the bank

could not have relied on them and there are no facts pled to

establish Primebank's reliance; there are no facts pled concerning

how the alleged acts/misrepresentations proximately caused damages

to the bank; and there are no facts pled to establish scienter.

None of the averments in Counts VIII and IX allege any

specific fraudulent misrepresentations by Coon. The wrongdoing

_____

[5] Knowledge of falsity is also referred to in the case law as
"scienter." Hyler v. Garner, 548 N.W.2d 864, 871 (Iowa 1996).

[6] In connection with the present motion the parties do not
dispute Coon may be found personally liable for fraudulent
misrepresentations made to the bank about Majestic's financial
condition. "A creditor may maintain an action for fraud, if it is
alleged there was a wrong personal to the creditor and not based on
the duty owed to the corporation to properly manage its affairs and
assets." Unertl v. Bezanson, 414 N.W.2d 321, 325 (Iowa 1987);
see Webster Industries, 234 F. Supp. 2d at 996.

alleged against Coon and McGwin is detailed in Count VII of the Amended Complaint and is incorporated in the subsequent counts alleging personal liability. Primebank contends the following incorporated allegations from Count VII satisfy the time, manner, content, reliance and proximate cause elements challenged:

> [Beginning in approximately February, 2005 and continuing until or about March 17, 2005 . . . ] Coon and McGwin caused Majestic to delay payment to the TFA Claimants and the Trust Claimants and to not comply with the P&S Act Prompt Payment Requirements and Loan Agreement representations, McGwin and Coon were falsely representing to the Bank that Majestic was current on all its payables. In addition, Majestic continued to operate, purchase hogs, and accept delivery of hogs while Majestic's current liabilities exceeded its current assets. This was done to induce the Bank to make and continue advances under the Debt Instruments and to not collect the Debt Instruments in reliance upon the representations of McGwin and Coon. (Amended Complaint ¶¶ 360, 363).

> Indeed, after the March 4, 2006 [sic] Notification, which was concealed form [sic] the Bank, the Bank continued to advance more than $500,000 under the Debt Instruments in reliance upon Coon's and McGwin's representations and with the belief that Majestic was current on its payables and that there were no liens to conflict with the Bank's lien on Majestic's livestock inventory. (Amended Complaint ¶ 364).

> The effect of McGwin's and Coon's fraudulent misrepresentations was to increase the Bank's losses and the TFA Claimants' and the Trust Claimants' losses arising out of their dealings with McGwin and Coon. (Amended Complaint ¶ 365).

(Pl. Resist. at 13). The only alleged misrepresentation in all of this is that McGwin and Coon at one point or points during a six-week period falsely told the bank Majestic was current on its payables, but the quoted paragraphs are not particular with respect to what Coon said or the attendant circumstances. Further on in Count VII the bank pleads the only specific representations attributed to Coon:

> E.   On March 8, 2005, Coon admitted to the Bank that McGwin had not previously given good information and had withheld information which was very important, and that Majestic's board had decided to terminate McGwin and that Chet Coolbaugh would be Majestic's new president. Also on March 8, 2005, Coon misrepresented to the Bank that Majestic's accounts payable situation was okay and that within a few weeks accounts payable would be caught up and that Majestic would have no problem going forward . . .
>
> . . . .
>
> G.   On March 15, 2005 Coon represented to the Bank that on that day Majestic would harvest 680 hogs, and would harvest 700 hogs next Tuesday, 300 hogs next Wednesday, and 560 hogs next Thursday.

(Amended Complaint ¶¶ 366(E), (G)).

Coon's March 8 "admission" is not alleged to have been false or relied on to the bank's detriment. Thus the sole specific misrepresentations alleged against Coon are that on March 8 he said Majestic's accounts payable situation was "okay," that they would be caught up in a few weeks and would have no problem going forward, and subsequently, on March 15 told the bank a certain

18

number of hogs would be harvested in the immediate future. The specific misrepresentations attributed to Coon on March 8 and 15 reinforce the lack of particularity concerning the earlier general allegations about what "McGwin and Coon" were jointly saying because it is left unclear whether Coon himself made any representations other than those on March 8 and 15.

The alleged March 8 and 15 representations by Coon are sufficiently particular as to time, place and content. The recipient is not identified or the place where the representations occurred, but from the context it is fair to infer the representations were made to a bank employee at the bank. In view of the relationship between the parties and the factual background pleaded in the Amended Complaint, that is enough to give Coon fair notice as to time, place and content. See Schaller Tel. Co., 298 F.3d at 746 (interpreting Rule 9(c) "in harmony with the principles of notice pleading," quoting Abels, 259 F.3d at 920). As to scienter, the bank's conclusory allegation that McGwin and Coon knew the representations about payables were false might suffice if facts were pleaded that would reasonably indicate Coon knew his March 8 statement about payables was false, see Asbury Square, L.L.C. v. Amoco Oil Co., 221 F.R.D. 497, 501 (S.D. Iowa 2004), but in predicting to the bank on March 8 that in a "few weeks accounts payable would be caught up" Coon implicitly informed the bank payables were not then current, which was true.

19

A conclusory allegation of knowledge of falsity is also made with respect to Coon's March 15 hog harvest statement. The additional allegations that no hogs were harvested on March 15 and Coon at the time planned to shut Majestic down bolsters the conclusory allegation enough to adequately plead scienter. (Amended Complaint ¶¶ 372, 373).

The element of reliance is a problem with respect to both alleged misrepresentations. The bank alleges in reliance on the representations of McGwin and Coon that Majestic was current on its payables, it loaned more than $500,000 to Majestic after March 4, 2005 and held off collecting on its debt instruments. (Amended Complaint ¶¶ 364, 366). It does not, however, plead facts demonstrating that it relied on Coon's March 8 statement about accounts payable -- the only specific such statement attributed to Coon -- or that it continued to advance money after that date.[7] It does not plead it advanced money or did anything in reliance on Coon's March 15 representation about the upcoming hog harvest figures. It follows from these deficiencies that the pleading is also lacking on the element of proximate cause.

---

[7] At hearing counsel for the bank stated in fact the bank advanced money after March 8, but the Court is limited to the pleading at this point. See supra at 13.

The Court therefore concludes Counts VIII and IX fail to allege fraud or fraudulent misrepresentation against Coon with the particularity required by Fed. R. Civ. P. 9(b). The general allegations about accounts payable representations made by Coon and McGwin in the February 2005 to March 17, 2005 time frame are too indefinite considered against the specific representations attributed to Coon. As to the specific representations, the bank has not sufficiently pleaded facts probative of scienter with respect to the March 8 representations, reliance, or proximate cause.

Coon argues the bank cannot in good faith plead reliance on the specific representations it attributes to him and should therefore be denied leave to amend as the bank alternatively requests in the event the present fraud allegations are found insufficient. The Court is not convinced amendment would be futile. In view of the liberal pleading amendment rule in Fed. R. Civ. P. 15(a), leave to amend to attempt to cure a Rule 9(b) pleading deficiency is the norm in preference to dismissal. <u>See</u> 5A C. Wright & A. Miller, <u>Federal Practice and Procedure: Civil</u> § 1300 at 265 (2004); 2 <u>Moore's Federal Practice</u> § 9.03[4] at 929 (3d. ed. 2006). The bank's alternative request for leave to amend should be granted. Frankly, the fraud allegations would benefit from amendment to clearly, concisely and with particularity state the

fraud claims against Coon and McGwin based on their individual conduct.

D.   Nondisclosure/Fraudulent Concealment

Count XI pleads a cause of action against McGwin and Coon for nondisclosure and quotes Restatement (Second) of Torts § 551 (1977)("Restatement"). Count XII pleads a cause of action against the same defendants for fraudulent concealment and quotes Restatement § 550. Under both counts the bank again seeks a judgment against McGwin and Coon for all of its losses and damages incurred in its dealings with Majestic. Neither count pleads any facts which would evince nondisclosure or fraudulent concealment, relying again, like Counts VIII and IX, on the averments in Count VII.

Preliminarily with respect to fraudulent concealment, the few general references to concealment in Count VII do not plead any acts beyond a failure to disclose information to the bank about Majestic's worsening condition and failure to meet its PSA payment obligations. (Amended Complaint ¶¶ 359, 364, 375, 376). Fraudulent concealment typically requires evidence the actor "actively conceals a defect or other disadvantage" or prevents the plaintiff from investigating." See Restatement § 550 cmt. a, b; Wilden Clinic, Inc. v. City of Des Moines, 229 N.W.2d 286, 293 (Iowa 1975)(". . . to constitute fraud by concealment or suppression of the truth there must be something more than mere silence or mere

failure to disclose known facts.")(quoting 37 Am. Jur. 2d <u>Fraud and
Deceit</u> § 145 (1968)). There are no pleaded facts of this kind,
accordingly, Count XII fails to state a claim and the focus here
should be on the allegations of nondisclosure.

The bank's basis for its nondisclosure claim has
developed during the course of the motion proceedings. Its written
resistance relies on Iowa case law recognizing a duty of disclosure
when the parties to a transaction have a confidential or fiduciary
relationship which if breached may give rise to an action for
fraudulent nondisclosure. The bank argued the requisite
relationship was supplied here by the fiduciary duty of officers
and directors of an insolvent corporation to other creditors, the
"insolvency exception" discussed previously. (Pl. Resist. at 15-
16). By the time of hearing on the motion to dismiss, however, the
bank shifted focus to the applicability of the provisions of
Restatement § 551 which recognizes liability for nondisclosure in
certain circumstances. Specifically, the bank argued those
described in § 551(2)(b),(c) apply. Thus, two nondisclosure
variants have been raised.

1.   Traditional Fraudulent Nondisclosure

"Concealment of or failure to disclose a material fact
can constitute fraud in Iowa." <u>Cornell v. Wunschel</u>, 408 N.W.2d 369,
364 (Iowa 1987). However, "special circumstances" must exist which
give rise to a duty to disclose. <u>See</u> <u>BBSerCo, Inc. v. Matrix Co.</u>,

324 F.3d 955, 960 (8th Cir. 2003)(citing <u>Jones Distrib. Co., Inc.</u> <u>v. White Consol. Indus.</u>, 943 F. Supp. 1445, 1473 (N.D. Iowa 1996)); <u>Wright v. Brooke Group Ltd.</u>, 652 N.W.2d 159, 174 (Iowa 2002). There is no specific test by which to determine the existence of a duty to disclose (ultimately a matter of law for the court), but it may result from "a relation of trust, from confidence, from inequality of condition and knowledge, or other attendant circumstances." <u>Clark v. McDaniel</u>, 546 N.W.2d 590, 592 (Iowa 1996)(quoting <u>Sinnard</u> <u>v. Roach</u>, 414 N.W.2d 100, 105 (Iowa 1987)).

In its written resistance to the motion to dismiss the bank acknowledged that typically a bank-borrower relationship is an arms-length transaction which does not result in a fiduciary or other relationship of trust and confidence which would furnish the requisite special circumstances to create a duty of disclosure. Rather, consistent with its response to the motion to dismiss the breach of fiduciary duty claim (Count VII), it relied on the insolvency exception for qualifying special circumstances. <u>See</u> <u>supra</u> at 9-10.

As discussed previously, the fiduciary duty of an officer or director of an insolvent corporation to the corporation's creditors prohibits the officer or director from unfairly favoring him or herself in the payment of corporate debts. That limited duty would not expose Coon to liability for the nondisclosures alleged generally in the Amended Complaint, nor would a breach of that duty

entitle the bank to recover all of its losses and damages as claimed by the bank. Arguably, the insolvency exception would impose a duty on Coon to disclose improper preferential payments to him, though apparently no Iowa case has sold held, but it could not give rise to the broader duty to disclose asserted by the bank. The same pleading infirmity thus exists with respect to Counts XI and XII as with respect to Count VII -- Counts XI and XII simply do not plead a claim against Coon for failure to disclose (or concealment of) preferential payments he may have received in breach of his duty as an officer or director of an insolvent corporation.

2.     Restatement § 551(2)(b), (c)

At hearing the bank conceded it had not gathered evidence to this point which would support a finding of a confidential or other special relationship between Majestic and the bank.[8] Instead,

---

[8] After the filing of its resistance, the bank cited supplemental authority in support of its fraudulent nondisclosure and concealment claims, Peoples Bank & Trust Co. v. Lala, 392 N.W.2d 179, 187-88 (Iowa App. 1986) and Nie v. Galena State Bank & Trust Co., 387 N.W.2d 373, 375-76 (Iowa App. 1986). Both of these cases rely on Restatement § 551 but they also serve to exemplify the kinds of circumstances which may give rise to a confidential or fiduciary relationship between a bank and its customer. In Lala the Iowa Court of Appeals found that the relationship between the debtors and a banker went beyond a mere bank-depositor relationship where the debtors and the banker were close and trusted personal friends, socialized together, the banker discussed the debtor's business investments during social gatherings, and for over twenty years the debtors had obtained all their business and personal financing through the banker. These circumstances warranted a finding that the debtors and the banker had placed special trust and confidence in each other and put the banker in a position to exercise influence over the debtors. 392 N.W.2d at 186. In Nie the

(continued...)

the bank argued that the liability rule found in Restatement §

551(2)(b), (c) applies in the pleaded circumstances:

> One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> . . . .
>
> > (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
> >
> > (c)    subsequently    acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; . . .

The Iowa Supreme Court applied subsections (b) and (c) of

§ 551(2) in concluding a manufacturer may be liable for fraudulent

nondisclosure in limited circumstances. <u>Wright</u>, 652 N.W.2d at 175-

77. By its terms, however, § 551(2) outlines a limited duty on the

part of a party to a business transaction to exercise reasonable

care to make disclosures to the other party -- a negligence

standard. Two issues are immediately apparent with respect to the

---

[8](...continued)
plaintiff sought investment advice from a bank officer to whom he had been referred by a prospective business partner. The banker, who advised positively with respect to the prospective investment, did not disclose he had a personal stake in the business in question. The court opined "a bank officer should disclose personal investments in a business which happens to be the same business a customer seeks investment advice about." 387 N.W.2d at 376. <u>Lala</u> and <u>Nie</u> are examples of the kind of special circumstances which result in a duty to disclose absent from the pleadings in this case.

applicability of these provisions to this case. First, the duty is to exercise reasonable care to disclose "before the transaction is consummated." The loan transaction between the bank and Majestic occurred in November 2004. The nondisclosure of Majestic's deteriorating financial condition and failure to make timely payments as required by the PSA occurred between January and March 2005. The Amended Complaint does not plead nondisclosures in connection with the original loan transaction. Only if advances on the revolving line of credit after January 2005 were viewed as separate business transactions would § 551(2) arguably apply. Second, neither Coon nor McGwin were a "party" to the loan transaction. There may well be an issue about whether § 551(2) extends to impose personal liability on the officer or "inside" director of a corporation for the failure to make a disclosure the corporate party has a duty to make under the circumstances. The parties have not briefed these issues. They came up only during hearing on the motion to dismiss.

As pleaded, Count XI is not very clear. It incorporates generally all of the preceding allegations in the Amended Complaint. While it quotes § 551 of the Restatement in its entirety it does not make any specific allegations about its applicability. Count XI also cites Wilden Clinic, supra, for the proposition that a duty to disclose exists between two parties where there exists a relationship of trust or confidence; traditional fraudulent

nondisclosure. As discussed previously, the bank has pleaded no facts to suggest such a relationship may have existed. Faced with a marginal pleading and an evolving theory of liability for nondisclosure raising issues which have not been adequately addressed, the undersigned will recommend that the motion to dismiss also be granted with respect to Count XI with leave, as the bank alternatively requests, to amend the complaint to assert a specific claim against defendants McGwin and Coon for personal liability under the rule articulated in § 551(2) of the Restatement if the bank concludes such a claim is warranted by fact and law. If a subsequent motion is filed challenging the complaint in this regard, the Court will be in a position, which it is not now, to determine the issues presented.

The fraudulent concealment claim, Count XII, should be dismissed for the reasons indicated above.[9]

## III.

### RECOMMENDATION AND ORDERS

IT IS RESPECTFULLY RECOMMENDED that defendant Coon's motion to dismiss be **granted in part and denied in part** as follows: The motion with respect to Counts VII, XI and XII of the Amended Complaint should be granted and the same dismissed, the motion with respect to Counts VIII and IX should be denied and the bank's

---

[9] To the extent Counts XI and XII are intended to plead species of fraud, they are, like the direct fraud claims, lacking in the particularity required by Fed. R. Civ. P. 9(b).

alternative request for leave to amend to cure the Rule 9(b) deficiencies granted with the proviso that if an appropriately amended complaint is not filed within twenty (20) days of the Court's order adopting this report and recommendation, Counts VIII and IX will be subject to dismissal without further proceedings. If the bank believes it has a present basis to plead a claim to recover preferential payments to Coon or defendant McGwin under the "insolvency exception" discussed in the body of the ruling, or for damages under § 551(2) of the Restatement, the bank should be granted leave to amend the complaint to include such claims at the time it amends to cure the deficiencies in the fraud allegations. Leave should also be granted to make amendments to the complaint to renumber counts and conform the allegations against McGwin to those against Coon. Counsel's attention is directed to LR 15.1 with respect to the form of amended pleadings.

IT IS ORDERED that the parties have until **June 18, 2007** to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1). Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990); Wade for Robinson v. Callahan, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. See Fed. R. Civ. P. 72; Thompson, 897 F.2d at 357.

IT IS FURTHER ORDERED that the consented-to motion to dismiss Count X [214] of the Amended Complaint (negligent misrepresentation) is **granted** and Count X is dismissed with prejudice. Fed. R. Civ. P. 41(a), LR 72.1.c.9.

IT IS SO ORDERED.

Dated this 31st day of May, 2007.

_____
ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE